UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| SANDI SWEETLAND, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN MCHUGH, ERIC FANNING, Acting ) <br> Secretary, SECRETARY OF THE ARMY, ) <br> PATRICK MURPHY, Undersecretary, ) <br> ) <br> Defendant. ) <br> ) | Case No. 4:16-cv-04049-SLD-JEH |

ORDER

Now before the Court is Defendants' motion to dismiss, or, in the alternative, motion for summary judgment ECF No. 21. For the following reasons, the motion is GRANTED, as a motion for summary judgment.

**BACKGROUND[1]**

Sweetland worked as an administrative assistant in the Engineering and Construction Division of the United States Army Corps of Engineers in Rock Island, Illinois. Final Agency Decision 1–2 (hereinafter "FAD"), Mem. Supp. Mot. Ex. 3, ECF No. 22-5. She was supervised by Branch Chief Tom Mack, and by a "second-level" supervisor, Denny Lundberg. *Id.* at 2.

---

[1] In a motion to dismiss, all well-pleaded allegations in the complaint are taken as true and viewed in the light most favorable to the plaintiff. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). At summary judgment, a court "constru[es] the record in the light most favorable to the nonmovant and avoid[s] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Defendants evince uncertainty as to whether their motion ought to be construed as for dismissal or for summary judgment, as discussed below. Regardless, the Court construes the facts, whether drawn from the Complaint, ECF No. 1, or the memorandum in support of the motion and its attached materials, ECF No. 22, in the light most favorable to Sweetland, who is the nonmoving party. However, in instances where facts alleged in the Complaint are directly contradicted by facts adduced in the motion and its supporting materials, the Court will accept Defendants' facts, since Sweetland has not disputed them. *See* L.R. 7.1(D)(2) ("A failure to respond [to a motion for summary judgment] will be deemed an admission of the motion."); *Wienco, Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992) (explaining that failure to respond to a motion for summary judgment "causes all factual assertions alleged by the opposing party to be deemed admitted").

In June and July of 2011, Sweetland was repeatedly absent from work without permission (in the Army's jargon, away without official leave or "AWOL"), and misreported her absences on her time sheets, as well as requesting sick leave when she was not actually sick. *Id.* Mack, along with representatives from human resources and a union representative, later met with Sweetland to talk about "her attendance history, her inconsistent stories regarding her absences, and her declining performance." *Id.*

On March 1, 2012, Sweetland sent Mack an email describing her dismay at unspecified comments made to her that were "workplace inappropriate," and telling Mack that she had left an envelope on his desk containing something "that I want you to see . . . [a]nd then rip it up." *Id.* at 3. The envelope contained a copy of an email from Geologist Thomas Dumolin, stating "You will have to help me with sections 3 through 13, I can't understand the directions." *Id.* Sweetland claims that this was a reference to a "sex DVD manual," and that it "was openly played continuously all morning long in the office."[2] Compl. 3, ECF No. 1. Sweetland also gave Mack a copy of an email she had sent to a coworker, in which she wrote, among other things:

> How can the guy ask me for help on the subject? What scares me is I know he would try to get close to me because he already tried it at Julie's when he gave me rides. Then we stopped talking for awhile. Yesterday he told me my butt has gotten smaller. If they have those workplace rules why don't people get it? Feel like I'm in the dark ages again. I don't enjoy hearing those comments but with this office I would be up there all the time if I took that hardcore attitude. It's one thing to listen to things privately but to mention it to a female coworker is not fun.

FAD 3. Mack, unsure of what to do, consulted with a "Management and Employee Relations Specialist," *id.* at 4, and, apparently in consequence, asked Sweetland for clarification. *Id.* She said that she did not want to discuss it and there was nothing to pursue. *Id.*

---

[2] Sweetland's language, taken literally, says that the manual was "openly played" in the office. While one assumes the DVD itself is meant, Sweetland offers no clarification.

2

Sweetland characterizes what followed as "experiencing problems which resulted in a series of adverse actions including AWOL and Suspension and made conditions completely uncomfortable to my ever feeling 'normal' or functional in the office," including her boss, presumably Mack, making "a lot of puns which were repeated by others during the workday/workweek." Compl. 3.

According to Defendants, this period included an incident on June 19, 2012 wherein Sweetland took some hours' leave without appropriately requesting it, *id.* at 4; submitted "leave slips" that in Mack's view were "not in the proper form," *id.*; and had some kind of argument with him about these events, *id.* at 5. On September 5, 2012, Mack proposed to suspend Sweetland for 10 days for having been AWOL.[3] *Id.* In support, he cited his having had "constantly" in the preceding months to remind Sweetland of the right procedures for requesting leave; her multiple late arrivals to work during the week of August 13, 2013[4]; and her not having appeared at work at all on August 16. *Id.* Lundberg found these charges supported by substantial evidence, and, evidently in consequence, suspended Sweetland for 10 days without pay, starting on October 15, 2012. *Id.* Sweetland never returned to work after this suspension ran, and on December 6, 2012, Mack proposed that Sweetland be fired ("removed"), which, on January 18, 2013, again with the ratification of Lundberg, she was. *Id.* 5-6.

Sweetland was mailed a notice of the firing on this date, which explained that she had two options for appeal: direct appeal to the United State Merit Systems Protection Board ("MSPB"), or an Equal Employment Opportunity ("EEO") complaint made to the Army's EEO

---

[3] It is unclear to whom Mack proposed it (although Lundberg's later approval suggests the proposal was submitted at least partly to him). The record describes a "Proposal to Suspend the Complainant," which has the ring of an official document, although the Final Agency Decision apparently views such a Proposal's nature as too well known to its audience to require explanation.

[4] So reported in the Final Agency Decision. Presumably an error for "2012."

office in Rock Island. Jan. 18, 2013 Letter 1–3, Mem. Supp. Mot. Ex. 1, ECF No. 22-3. On April 29, 2013, Sweetland elected the latter path, by submitting a complaint to the EEO office. Formal Compl. of Discrimination, Mem. Supp. Mot. Ex. 2, ECF No. 22-4. This document listed Sweetland's current address as being a P.O. Box in Davenport, Iowa, care of one Celia Rangel. *Id.* at 1, 4.

The Army investigated Sweetland's complaint and issued a FAD. The FAD exhaustively reviewed Sweetland's clams, as well as testimony from various other parties involved, and determined on this basis that Sweetland had not been the victim of discrimination. FAD 22. The Army's Employment Opportunity Compliance and Complaints Review department ("the EEOCCR department") sent a copy of this decision to the address Sweetland had listed, postmarked February 10, notifying Sweetland that she had the right either to file an appeal with the MSPB within thirty days, or to file a civil action within the same period of time. *Id.* at 22–23. The envelope containing the decision was returned unopened by the Postal Service to the EEOCCR on April 8, 2015. Feb. 10 Mailing Envelope, Mem. Supp. Mot. Ex. 4, ECF No. 22-6. The envelope had two stamps on it next to the mailing address—Sweetland's P.O. Box—with three blank lines in each stamp. *Id.* The lines are labeled "1st notice," "2nd notice," and "returned." *Id.* The first stamp has been filled out only in the "first notice" field, with the date "2/17/13." *Id.* "3-6," 3-18," and "3-25" have been written in the three spaces on the other stamp. On the mailing address itself, someone has crossed out the original box number for Sweetland, which was the one she had given as her official address, and written in a different one. Underneath the first address, which has been crossed out in its entirety, a Davenport, Iowa street address is printed, along with Sweetland's name and the words "notify sender of new address." Multiple stamps with the words "unclaimed – returned to sender" are printed across

4

the face of the envelope. *Id.* When it received this envelope, the EEOCCR department forwarded it to the Rock Island EEO office, which mailed a duplicate copy to the P.O. Box address. Mem. Supp. Mot. Ex. 5, ECF No. 22-7.

On May 20, 2015, the MSPB received Sweetland's appeal of the FAD. Mem. Supp. Mot. Ex. 7, ECF No. 22-9. The appeal listed Sweetland's address as a street address in Davenport, Iowa—the same one that had been printed on the lower portion of the returned mailing envelope. *Id.* at 1. On June 2, 2015, Sweetland emailed individuals at the Rock Island EEO office indicating, among other things, that this was indeed her address. Mem. Supp. Mot. Ex. 8, ECF No. 22-10.

On June 3, 2015, an Administrative Law Judge ("ALJ") at the MSPB issued an "Order on Timeliness." Mem. Supp. Mot. Ex. 9, ECF No. 22-11. This order indicated that Sweetland's appeal appeared to have been untimely filed, and that the MSPB was considering dismissal of the appeal on that basis. *Id.* at 1. The order noted that Sweetland's appeal appeared to have been filed on May 20, 2015, 73 days late, *id.* at 2, and ordered Sweetland either to submit evidence showing why the appeal was not late, or to explain why good cause existed for the lateness, *id.* at 3. The Army responded, arguing that Sweetland's appeal should indeed be dismissed as untimely filed, Mem. Supp. Mot. Ex. 10, ECF No. 22-12. Sweetland did not respond, and on July 28, 2015, the ALJ issued an Opinion dismissing the appeal as untimely filed. ALJ Opinion, Mem. Supp. Mot. Ex. 11, ECF No. 22-13. The Opinion noted that Sweetland could once again contest the ALJ's opinion, this time by filing a petition for review by September 1, 2015. *Id.* at 6. Sweetland filed such a petition on September 1, 2015, seeking review of the ALJ's Opinion. Petition, Mem. Supp. Mot. Ex. 12, ECF No. 22-14.

5

Sweetland's petition affirms that the P.O. Box to which the Army mailed the initial copy of the FAD was "the address [she] intentionally indicated for use on all correspondence related to the purposes of this complaint," *id.* at 1, and that the Army's mailing was properly addressed, *id.* She claims that the Post Office "redirected/rerouted delivery copy dated February 6, 2015," *id.* and that this "postal misdirect . . . was the cause of delay," *id.* On November 6, 2015, the MSPB issued its own Final Decision, affirming the ALJ's Opinion that Sweetland's appeal should be dismissed as untimely filed. MSPB Final Dec., Mem. Supp. Mot. Ex. 14, ECF No. 22-17. Sweetland then petitioned the Equal Opportunity Employment Commission ("EEOC"), which decided that the MSPB's dismissal was not reviewable by the EEOC because it was a purely procedural dismissal, and the EEOC therefore lacked jurisdiction over it. Mem. Supp. Mot. Ex. 17, ECF No. 22-19. Sweetland filed the instant lawsuit on March 4, 2016, claiming that she had been harassed on the basis of her sex and retaliated against for complaining about the harassment, Compl. 3, presumably pursuant to Title VII, 42 U.S.C. §§ 2000e–2000e-17.

## DISCUSSION

### I. Legal Standard on a Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial—that is, whether there is sufficient evidence favoring the non-moving party for a jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.

*McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255).

## II.     Analysis

### a. Motion to Dismiss vs. Motion for Summary Judgment

Defendants characterize their motion as either a motion to dismiss or for summary judgment, arguing that it should be construed by the Court as the former, but that even if it is taken to be the latter, the motion should be granted and Sweetland's claim dismissed. Mem. Supp. Mot. 18–19. Defendants do not explain what difference they think it makes how the motion is construed.

Defendants' motion is for summary judgment. Ordinarily, a motion made under Federal Rule of Civil Procedure 12(b)(6) that presents "matters outside the pleadings . . . must be treated as one for summary judgment under rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, a plaintiff may incorporate by reference in her complaint documents that she attaches to the complaint, *id.* R. 10(c), and when she does so, an opposing party may rely on these documents in a motion to dismiss without converting the motion to dismiss into one for summary judgment. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). By the same logic, a party moving to dismiss may himself attach documents that "are referred to in the plaintiff's complaint and are central to his claim," again without turning his motion into a motion for summary judgment. *Id.*

Sweetland's complaint, however, includes only the final letter from the EEOC declining to review her claim. *See* Compl. Ex. 1, ECF No. 1. The many pieces of procedural history that Defendants attach to their motion are not referred to in Sweetland's complaint, nor are they

7

central to her claim. Rather, they are central to Defendants' argument that Sweetland's claim was time barred at an earlier phase of the proceedings. Defendants' only support for the argument that these materials may nonetheless be relied upon in a motion to dismiss is the observation that the EEOC's letter to Sweetland refers to them. Mem. Supp. Mot. 18–19. Defendants claim that for this reason, the record of the filings made as Sweetland's claim wended its way through Army and administrative channels is itself "integral to or explicitly relied upon in the pleadings." *Id.* at 18. Defendants cite out-of-circuit precedent for the notion that such materials being in some way "integral" to the pleadings makes them fair game for a motion to dismiss. But that is not the standard in this Circuit, which recognizes only a "narrow exception [to Rule 12(d)] . . . . aimed at cases interpreting, for example, a contract," *Trinity*, 300 F.3d at 735 (quoting *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)). And in any event, the precedent Defendants do cite does not support their position. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint . . . .").

Sweetland's claim is that she was harassed and terminated on the basis of her sex, and does not rely on the procedural history Defendants seek to introduce. Defendants may rely on the material in arguing that they are entitled to judgment as a matter of law—but only a summary judgment under Rule 56.[5]

### b. Timeliness of Sweetland's Appeal to the MSPB

The ALJ's July 28, 2015 dismissal of Sweetland's appeal to the MSPB was appropriate, because her appeal of the FAD to the MSPB was untimely; hence, judgment must enter against

---

[5] Since Sweetland has not opposed the motion, *see supra* n.1, the difference between the two kinds of motion in this case is not pronounced; but if the Court is to rely on the attachments to Defendants' motion, it is well to be clear about the procedural basis for doing so.

her in this Court. Understanding why requires a brief excursion into the Civil Service Reform Act ("CSRA"), 5 U.S.C. §§ 1101–05.

The CSRA allows federal employees to seek redress for certain enumerated personnel actions taken against them.[6] Employees may do so by filing an appeal of the action with the MSPB, which was created for this purpose. *See* 5 U.S.C. §§ 1204, 7512, 7701. "Such an appeal may merely allege that the agency had insufficient cause for taking the action under the CSRA; but the appeal may also or instead charge the agency with discrimination prohibited by another federal statute, such as Title VII of the Civil Rights Act of 1964 . . . or the Age Discrimination in Employment Act of 1967 . . . ." *Kloeckner v. Solis*, 133 S. Ct. 596, 600 (2012) (citations omitted). When an appeal alleges such prohibited motives—that is, that "race, color, religion, sex, national origin, disability, age, or genetic information" was the basis for the challenged agency action—the appeal is termed a "mixed case appeal," because it both alleges a claim of prohibited discrimination and a prohibited agency action. 29 C.F.R. § 1614.302(a)(2). Sweetland's claim, alleging sex discrimination as it did, was such a mixed case, as Defendants acknowledge.

Instead of immediately seeking review of the agency action with the MSPB, an employee may also choose first to petition the agency directly for redress, by filing a "mixed case complaint" alleging discrimination "related to or stemming from an action that can be appealed to" the MSPB, *see* 5 U.S.C. § 7702(a); 29 C.F.R. § 1614.302(a)(1). If the agency renders an unfavorable decision, the employee may then choose to appeal the decision to the MSPB, in the same fashion as she could have done in the first instance. *See* 5 C.F.R. § 1201.154(a); 29 C.F.R.

---

[6] These actions include removals, suspensions for more than 14 days, reductions in pay, and furloughs of 30 days or less. 5 U.S.C. § 7512.

9

§ 1614.302(b).  She may also, after the agency has rendered an unfavorable decision, choose to file a lawsuit directly in federal district court.  *Id.*

"If the MSPB upholds the personnel action (whether in the first instance or after the agency has done so), the employee again has a choice: She may request additional administrative process, this time with the EEOC, or else she may seek judicial review."  *Kloeckner*, 133 S.Ct. at 601.  This review can, in the case of employment decisions not alleged to be discriminatory—"unmixed" appeals—be had only in the United States Court of Appeals for the Federal Circuit.  5 U.S.C. § 7703(b)(1)(a).  However, when a claim also alleges discrimination and is therefore "mixed," the claim must be brought under Title VII or the ADEA, and in federal district court.  5 U.S.C. §§ 7702, 7703; *see also Kloeckner*, 133 S.Ct. at 604 ("Now just put § 7703 and § 7702 together—say, in the form of a syllogism, to make the point obvious. . . . Ergo, mixed cases shall be filed in district court.").

While the rules described above are complicated, they can easily and accurately be conceived of as a system that mandates federal employees to seek at least one form of administrative review, and thereafter allows them the option either to pursue further administrative review, or file a federal claim.  Employees may elect to challenge allegedly discriminatory actions either through their agency's own formal complaint process or an appeal to the MSPB; thereafter, they may pursue a federal lawsuit or seek further review, from the MSPB if they proceeded through the agency, or from the EEOC if they have already proceeded through the MSPB.  Suit rights accrue after the final decisions of the agency, MSPB, and EEOC.  Relevantly in the present case, at every step an employee has thirty days from receipt of the notice of decision to file a complaint in district court.  29 C.F.R. § 1614.310.

The standard by which agency action, and administrative review of that action, are reviewed in federal court varies depending upon whether the case is "mixed" or not. Employment decisions not alleged to be discriminatory, which are reviewed by the Federal Circuit, will be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . obtained without procedures required by law, rule, or regulation having been followed; or . . . unsupported by substantial evidence." 5 U.S.C. § 7703(c)(1)–(3). In mixed cases, review is more searching: "the employee or applicant shall have the right to have the facts subject to trial de novo by the reviewing court." *Id.* § 7703(c). It is not plain from the language of the statute what "the facts" consist of—whether, that is, they include a case's procedural history, and possibly a case's dismissal on procedural grounds. It is certainly clear that, as in the instant case, district courts will sometimes be called upon to review a purely procedural dismissal. *See Kloeckner*, 133 S.Ct. at 607 (holding that an employee's mixed appeal should be reviewed in its entirety by the district court "whether the MSPB decided her case on procedural grounds or instead on the merits."). What standard of review should a district court apply to the MSPB's procedural dismissal—the de novo standard of § 7703(c), or the more deferential, abuse of discretion review mandated for use in the federal circuit?[7] See *Perry v. Merit Sys. Prot. Bd.*, 397 F. App'x 647, 648 (Fed. Cir. 2010) (affirming the MSPB's dismissal of

---

[7] Several older district court cases in the Seventh Circuit have held that "in a so-called 'mixed' case charging both a violation of Title V and discrimination under Title VII, the district court should hear both claims, applying the first standard (arbitrary, without procedures, or unsupported by substantial evidence) to the Title V claim and the de novo standard to the Title VII claim." *Richards v. Heckler*, No. 83 C 6913, 1985 WL 4255, at *1 (N.D. Ill. Nov. 26, 1985); *see Schafman v. Walters*, No. 85 C 5785, 1988 WL 1449, at *1 (N.D. Ill. Jan. 6, 1988) (same); *Ristoff v. United States*, No. 83 C 7941, 1985 WL 2075, at *3 (N.D. Ill. July 24, 1985) (same). The Court, and presumably Defendants, were unable to locate a case, either pre- or post-*Kloeckner*, in which a district court reviewed a mixed appeal that had been dismissed on procedural grounds, and determined the appropriate standard of review (including *Kloeckner* itself on remand). As noted here, there are strong arguments in favor of construing the statute to mandate a more deferential, abuse of discretion standard, most prominently the fact that this is the standard the Federal Circuit routinely and uncontestedly applies to procedural dismissals, and applying a different standard to procedural dismissals that happened to involve a mixed claim would redound to the benefit of mixed-case plaintiffs without any obvious justification in circumstance or statute.

an untimely appeal on the abuse of discretion standard); *Mendoza v. Merit Sys. Prot. Bd.*, 966 F.2d 650, 652–53 (Fed. Cir. 1992) (same).

Fortunately, the Court need not decide the question (to which there appears to be no direct answer in the Seventh Circuit) in order to decide this case and dismiss Sweetland's claim. For whether the MSPB's dismissal of Sweetland's claim is reviewed deferentially or de novo, dismissal was appropriate. Sweetland appealed the FAD to the MSPB on May 20, 2015, a date that was, on the most generous interpretation possible, 100 days after the EEOCCR mailed the envelope containing the FAD to Sweetland's address of record. Federal regulations require an employee appealing a FAD to the MSPB to do so 30 days after the effective date of the action appealed (here, February 6, 2015, *see* FAD 1), or thirty days after receipt of that decision, whichever is later. 5 C.F.R. § 1201.22(b)(1). Furthermore, the regulations state that "[a]n appellant is responsible for keeping the agency informed of his or her current home address for purposes of receiving the agency's decision, and correspondence which is properly addressed and sent to the appellant's address via postal or commercial delivery is presumed to have been duly delivered to the addressee." *Id.* § 1201.22(b)(3). The same subsection provides, as an example of the rule's application that "[a]n appellant who fails to pick up mail delivered to his or her post office box may be deemed to have received the agency decision." *Id.* Thus, the regulations appear to treat the presumption of receipt less like a legal presumption—which might be rebuttable—and more, as the word "deem" would suggest, as a constructive date of receipt.[8] An appellant to the MSPB bears the burden to prove by a preponderance that an appeal is timely. *Id.* § 1201.56(b)(2)(i)(B). While the presumption of receipt may be overcome "under the

---

[8] "To treat (something) as if (1) it were really something else, or (2) it has qualities that it does not have . . . ." "Deem," *Black's Law Dictionary* (10th ed. 2014).

12

circumstances of a particular case," whether to waive the presumption under particular circumstances is within the MSPB's discretion. *Id.* § 1201.22(b)(3).

Here, the envelope in which the Army's FAD was mailed to Sweetland indicates that delivery was attempted, both at Sweetland's address of record for her original appeal to the Army, and to the address she later claimed to be the appropriate one, on four separate occasions before the envelope was returned unclaimed. *See* Feb. 10 Mailing Envelope. The latest of these attempts—three of which appear to have been made at the address Sweetland later claimed was the correct one—occurred on March 25, 56 days before the filing of her eventual appeal. *See id.* But this does not even, strictly speaking, matter—all that does is that the FAD was "properly addressed and sent to [Sweetland's] address via postal or commercial delivery in the first half of February. 5 C.F.R. § 1201.22(b)(3). Sweetland received constructive notice of the Army's decision months before she actually appealed, making her appeal untimely on even the most generous interpretation. *Id*. Sweetland failed to explain this lateness timely, of course, but even her eventual explanation is insufficient to overcome the presumption that properly addressed mail, sent via the postal service, has been received by an appellant. *Id.*

Sweetland argued, in her MSPB appeal, that the Post Office Box she listed, and to which the FAD was directed, was indeed correct and that the Postal Service should not have forwarded the FAD to the Davenport address she later began using, because she was not, when the FAD was originally sent, in a position to receive mail at that Davenport address. Petition 1. But the envelope containing the FAD indicates that delivery was attempted on February 17. Feb. 10 Mailing Envelope. While the Post Office Box on the mailing address has been crossed out, and a different-numbered Post Office Box written next to it, Sweetland does not contend that either of these boxes was incorrect. The reasonable inference, given that the new address printed on the

13

envelope is dated March 3, 2015, is that the Postal Service attempted delivery at one or the other of the Post Office Boxes, and that Sweetland did not claim the FAD.  Both Sweetland and Defendants agree that the FAD was properly addressed and mailed.  Sweetland's later explanations do not show by a preponderance that her appeal, filed 92 days after the FAD was delivered, was timely.  5 C.F.R. § 1201.56(b)(2)(i)(B).

A petitioner "may not avoid service of a properly addressed and mailed decision by intentional or negligent conduct which frustrates actual service," 5 C.F.R. § 1201.22(b)(3), but late filings may be excused if a party shows good cause, 5 C.F.R. § 1201.114(g).

> Considerations bearing on whether or not there is good cause for an untimely filing include the length of the delay, whether the appellant was notified of the time limit, whether circumstances existed beyond the appellant's control that affected her ability to comply with the deadline, whether the appellant was negligent regarding the delay, and whether the appellant suffered any "unavoidable casualty or misfortune" that may have prevented timely filing.

*Moore v. Merit Sys. Prot. Bd.*, No. 2014-3089, 582 F. App'x 873, 875 (Fed. Cir. Sept. 16, 2014) (quoting *Zamot v. Merit Sys. Prot. Bd.*, 332 F.3d 1374, 1377 (Fed.Cir. 2003)).  This is a closer call, but Sweetland's (late) explanation does not show good cause for her delay.  She does not contest that delivery was originally attempted at her Post Office Box mailing address of record, and, while she provides a plausible explanation for why she was unable to pick up mail sent to the Davenport address (she did not have a key to the mailbox), she does not explain why this, or her earlier failure to pick up mail at her address of record, constitute circumstances beyond her control.  Add to this that more than three months elapsed between the Army's initial mailing of its FAD and Sweetland's appeal, and that Sweetland points to no "unavoidable casualty or

misfortune" that occasioned her delay.  Sweetland did not show good cause for her lateness, and her appeal was untimely and properly dismissed.  5 C.F.R. § 1201.22(b)(1).[9]

The Court's above review of Sweetland's untimeliness in filing her appeal of the FAD is de novo.  A fortiori, and review on an abuse of discretion standard would not find that the ALJ's dismissal of Sweetland's appeal, or the MSPB's later adoption of that dismissal, were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . obtained without procedures required by law, rule, or regulation having been followed; or . . . unsupported by substantial evidence."  5 U.S.C. § 7703(c)(1)-(3).

## CONCLUSION

Accordingly, the MSPB's Final Order, ECF No. 22-17, is AFFIRMED, and Defendants' motion, ECF No. 21, GRANTED as a motion for summary judgment.  No further claims remaining, the Clerk is directed to enter judgment and close the case.

Entered this 27th day of February, 2017.

                                                                          s/ Sara Darrow
                                                                          SARA DARROW
                                                           UNITED STATES DISTRICT JUDGE

---

[9] It bears mentioning that the Clerk of this Court's most recent mailings to Sweetland's address of record have been returned as undeliverable, which explains Sweetland's failure to oppose Defendants' motion for summary judgment. *See* Mail Returned as Undeliverable, ECF No. 29.